IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY LENIX, on behalf of SHARAY LENIX,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social Security,<br><br>　　　　　Defendant.<br>_____/ | CASE NO.  1:04cv5946 TAG<br><br>MEMORANDUM DECISION AND ORDER ON PLAINTIFF'S APPEAL FROM ADMINISTRATIVE DECISION<br><br>ORDER DIRECTING THE CLERK TO ENTER JUDGMENT IN FAVOR OF DEFENDANT AND AGAINST PLAINTIFF |

**INTRODUCTION**

Jerry Lenix ("Mr. Lenix"), on behalf of his minor daughter Sharay Lenix ("claimant" or "plaintiff"), seeks judicial review of an administrative decision denying his daughter's claim for child's supplemental security income ("SSI") benefits under Title XVI of the Social Security Act ("Act").  Pending before the Court is claimant's appeal from the administrative decision of the Commissioner of Social Security ("Commissioner").  Claimant filed her complaint on July 8, 2004, and her opening brief on December 20, 2004.[1]  The Commissioner filed her opposition to the appeal

---

[1] Claimant's opening brief is entitled "Motion for Summary Judgment."

1

on December 30, 2004.[2]  Claimant filed a reply brief on January 18, 2005.[3]  Despite claimant's characterization of her pleadings as a motion for summary judgment, such pleadings are in effect an appeal from the administrative decision of the Commissioner, and will be evaluated and determined accordingly by the court.

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties consented to proceed before a United States Magistrate Judge, and, by an order dated January 13, 2005, this action was assigned to the United States Magistrate Judge for all further proceedings.

## JURISDICTION

On October 2, 2002, claimant's mother, Shirley Lynn Gray, filed an application for child's SSI benefits, on behalf of her daughter, alleging a disability onset of January 2, 2002, due to Attention Deficit Hyperactivity Disorder ("ADHD").  (Administrative Record ("AR") 47-50, 52).  The application was denied initially and on reconsideration, and claimant thereafter appeared before Administrative Law Judge ("ALJ") Richard C. Goodwin on September 15, 2003, at which time he heard testimony solely from claimant's father, Mr. Lenix.  (AR 246-251).  On January 28, 2004, the ALJ issued a decision finding that claimant was not disabled.  (AR 12-17).  The Appeals Council denied a request for review on April 6, 2004.  (AR 4-6).  Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Claimant filed this action for judicial review pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both claimant and the Commissioner and will only be summarized here.  At the time of the ALJ's decision, claimant was eight years old (date of birth, November 1, 1995).  (AR 17, 47).  At the administrative hearing held on September 15, 2003, Mr. Lenix testified that claimant was living with him and attending regular school classes.  (AR 244).

---

[2] The Commissioner's opposition brief is entitled ""Opposition to Plaintiff's Opening Brief."

[3] Claimant's reply brief is entitled "Opposition to Cross-Motion for Summary Judgment and Reply in Support of Motion for Summary Judgment."

Mr. Lenix indicated that claimant had "speech problems" and difficulty paying attention or minding people. (AR 244). He testified that although the school had tried to hold her back on two occasions, he had prevented that from occurring for social reasons. (AR 244). He stated that claimant attends Kern Mental Health about twice a month and indicated that her problems consisted of taking money from her mother's purse, fighting, difficulty sitting still, difficulty keeping her mind on things and problems completing tasks. (AR 245). Mr. Lenix testified that claimant could not tell time, does not read the newspaper, could operate the television, but not the VCR, and could not cut with a knife, use scissors, or print her name clearly. (AR 246). He indicated that claimant was able to ride a bicycle, had no problems with walking or running, visited parks and zoos in the summertime with Kern Mental Health, and, although she did not really have friends her own age, she would play with other kids in their backyard. (AR 246). Mr. Lenix further testified that claimant was unable to count change, understands instructions but is unwilling to follow them, does not comb her own hair, choose her own clothing or dress herself and does no housework. (AR 247). He stated that claimant has difficulty recognizing or avoiding danger, does not take care of her personal property, has no hobbies and does not fix her own meals. (AR 248). Mr. Lenix testified that claimant regularly attended school and, although she had problems with speech, she had never been "kicked out of school." (AR 248-249). He stated that she had been diagnosed with ADHD and was taking medication to help her with her hyperactivity. (AR 249). He indicated that the medication did not appear to help that much, it merely put her to sleep. (AR 249, 250).

## SEQUENTIAL EVALUATION PROCESS

On August 22, 1996, Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub. L. 104-193, 110 Stat. 105 which amended 42 U.S.C. § 1382c(a)(3). Under this law, a child under the age of eighteen is considered disabled for the purposes of SSI benefits if "that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I) (2003). The regulations provide a three-step process in determining whether a child is disabled. First, the ALJ must determine whether the child is engaged in

substantial gainful activity. 20 C.F.R. § 416.924(b). If the child is not engaged in substantial gainful activity, then the analysis proceeds to step two. Step two requires the ALJ to determine whether the child's impairment or combination of impairments is severe. 20 C.F.R. § 416.924(c). The child will not be found to have a severe impairment if the impairment or combination of impairments constitutes a "slight abnormality or combination of slight abnormalities that causes no more than minimal functional limitations." Id. If, however, there is a finding of severe impairment, the analysis proceeds to the final step which requires the ALJ to determine whether the impairment or combination of impairments "meet, medically equal or functionally equal" the severity of a set of criteria for an impairment in the listings. 20 C.F.R. § 416.924(d). The regulations provide that an impairment will be found to be functionally equivalent to a listed impairment if it results in extreme limitations in one area of functioning or marked limitations in two areas. 20 C.F.R. § 416.926a(a). To determine functional equivalence, the following six domains, or broad areas of functioning, are utilized: acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, caring for yourself, and health and physical well-being. 20 C.F.R. § 416.926a.

## STANDARD OF REVIEW

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." Delgado v. Heckler, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, Sorenson v. Weinberger, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. McAllister v. Sullivan, 888 F.2d 599, 601-602 (9th Cir. 1989); Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 576 (9th Cir. 1988). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. Mark v. Celebrezze, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989) (quoting, Kornock v. Harris, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. <u>Richardson</u>, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. <u>Allen v. Heckler</u>, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. <u>Brawner v. Secretary of Health and Human Services</u>, 839 F.2d 432, 433 (9th Cir. 1987).

## ALJ'S FINDINGS

The ALJ found at step one that claimant has never engaged in substantial gainful activity. (AR 13). At step two, the ALJ determined that claimant suffers from ADHD, a severe impairment. (AR 13). The ALJ discussed Mr. Lenix's hearing testimony and concluded that his testimony was credible, but it did not support a finding of disability under the Act. (AR 14). The ALJ determined that the evidence of record demonstrated that claimant's limitations, resulting from the effects of her severe ADHD, do not meet, medically equal or functionally equal the criteria of any of the listings impairments. (AR 14). With regard to functional equivalence, the ALJ made the following findings: claimant has no limitation in acquiring and using information, claimant has less than a marked limitation in attending and completing tasks, claimant has no limitation in interacting and relating with others, there is no indication that claimant has any physical impairment that interferes with her functioning in moving about and manipulating objects, claimant has no limitation in caring for herself, and claimant has no limitation in health and physical well being. (AR 15-16). Accordingly, the ALJ concluded claimant was not under a disability within the meaning of the Act. (AR 16-17).

## ISSUES

Claimant contends that the Commissioner erred as a matter of law. Specifically, claimant argues that:

1. The ALJ failed to fully and fairly develop the record with regard to claimant's mental impairment; and

2. The ALJ erred by improperly weighing Mr. Lenix's testimony, since the ALJ found the testimony credible, yet still found claimant not disabled.

///

This court must uphold the Commissioner's determination that claimant is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

## DISCUSSION

**A. Develop the Record**

Claimant argues that the ALJ failed in his duty to fully and fairly develop the record in this case. (Court Doc. 11, pp. 4-7). Claimant specifically asserts that the ALJ should have ordered a consultative psychological evaluation to determine the nature and extent of her mental impairments instead of merely basing his residual functional capacity ("RFC") finding on the opinion of a non-examining medial professional. (Court Doc. 11, p. 4).

The ALJ has a duty to fully and fairly develop the record. Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983). However, regarding the ALJ's duty to fully and fairly develop the record, the Ninth Circuit places on claimant the burden of proving prejudice or unfairness as a result of an ALJ's failure to develop the record fully. Vidal v. Harris, 637 F.2d 710, 713 (9th Cir. 1991) (If a claimant can demonstrate prejudice or unfairness as a result of the ALJ's failure to fully and fairly develop the record, the decision may be set aside).

Claimant argues that the ALJ should have requested a current RFC assessment from claimant's treating physicians, ordered an updated consultative examination, or called a medical expert to give testimony regarding claimant's limitations. (Court Doc. 14, p. 4). The regulations provide that the Administration "will ask you to attend one or more consultative examinations" only when the evidence of record is inadequate or ambiguous and clarification is necessary. 20 C.F.R. §§ 416.912(f), 416.917. Although claimant faults the ALJ for not obtaining additional recent treatment records, the undersigned finds that the record before the ALJ contained sufficient medical evidence about claimant's ADHD for the ALJ to make a disability decision in this case.

As noted by the Commissioner, the record is replete with almost two years of claimant's group therapy treatment notes and her medication management progress notes, all of which documented her appearance, mood, behavior, orientation, memory, concentration, attention and levels of cooperation, participation, and understanding. (Court Doc. 13, p. 8).

Between January 2002 and August 2003, claimant attended social skills group therapy sessions and received medication management for ADHD at the Kern County Mental Health System of Care. (AR 92-234). On January 10, 2002, an assessment form completed by Kern County Mental Health System of Care noted that claimant was referred to mental health by her teacher at school because claimant was disrupting class and having difficulty sitting still, staying on task, paying attention to the teacher, and following instructions. (AR 218). Claimant was diagnosed with ADHD, combined type, and given a Global Assessment of Functioning ("GAF") score of 50.[4] (AR 221). Nevertheless, the medical professional noted that the hyperactive symptoms described by claimant's mother were not present in the office, though claimant did move from one task to another quickly and became bored easily. (AR 221). The medical professional noted that she was taking claimant's mother's word that claimant is more hyperactive in other settings. (AR 222). Staff Psychiatrist, Renu Shishodia, M.D., diagnosed claimant with ADHD, combined type, on February 8, 2002, and indicated that claimant was being started on the medication Concerta for treatment. (AR 224-226).

Kern County Mental Health System of Care progress notes from August of 2002 to June 2003 reveal that claimant made progress in group activity and at her school. (AR 94-215). In August of 2002, claimant's mother noted that claimant had a bad day at school because she had forgotten to give claimant her medication. (AR 115). It was noted in October of 2002 that claimant continued to take her medications as prescribed and, as a result, was reportedly doing well in school, received no reports of behavioral concerns from her school, was doing well at home and had no problems with completing homework assignments. (AR 98, 99). It was noted that claimant was becoming more active and involved and more outspoken in group activity. (AR 97).

A childhood disability evaluation form, completed in November of 2002, indicated that claimant's impairment of ADHD was significantly improved with treatment and that, although she had a severe impairment, or combination of impairments, it did not meet, medically equal or

---

[4] A GAF of 50-41 reflects: "[s]erious symptoms (e.g., suicidal ideation, severe obsessive rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS-IV 32 (4th ed. 1994).

functionally equal the listings. (AR 140). The physicians opined that claimant had no limitation with acquiring and using information, interacting and relating with others, moving about and manipulating objects, caring for herself, and health and physical well being, and a less than marked limitation with attending and completing tasks. (AR 142-143). Psychiatrist Marina C. Vea, M.D., indicated that claimant was diagnosed with ADHD, but showed steady improvement since the introduction of medication. (AR 147).

A childhood disability evaluation form, completed by Dr. Vera in January of 2003, indicated that claimant's impairment of ADHD was significantly improved with treatment and that although she had a severe impairment, or combination of impairments, it did not meet, medically equal or functionally equal the listings. (AR 148). Dr. Vera opined that claimant had no limitation with acquiring and using information, interacting and relating with others, moving about and manipulating objects, caring for herself, and health and physical well being, and a less than marked limitation with attending and completing tasks. (AR 150-151).

January and February 2003 progress notes reveal that claimant's issues continued to interfere with her social, family and educational functioning. (AR 196-215). It was noted that claimant's mother was in the hospital due to surgery complications and that claimant was worried about her mother. (AR 207, 209). Claimant indicated that she was feeling better once her mother was released from the hospital. (AR 205). February 11, 2003 progress notes report that claimant was doing much better since her mother was released from the hospital and was making progress toward her goals. (AR 201). It was reported on February 24, 2003, that claimant's behavior had improved, as evidenced by reports from teachers, but that she was having a difficult time academically. (AR 197). April 3, 2003 progress notes indicate that claimant was at risk for retention in school due to low test scores. (AR 189). It was noted that claimant's mother had arranged for the school to administer medications to claimant, but that the mother had failed to provide the school with the medications. (AR 189). It was therefore unclear if claimant was taking her medications as prescribed. (AR 189). On April 7, 2003, claimant reported that she was doing good in school. (AR 188). However, claimant's report card revealed that she was having difficulty in all subjects and was doing under grade level work. (AR 188). May 2003 progress notes indicate that claimant was taking her

medication daily and was making some progress. (AR 180, 182). On June 23, 2003, claimant's mother reported that claimant was doing "OK." (AR 176). At group therapy treatment, on June 24, 2003, claimant was reportedly feeling happy, was able to work well with others, was cooperative with peers and appeared to have a good understanding of the activity. (AR 174). On June 30, 2003, claimant's father reported that claimant was doing "OK." (AR 170). July 2003 group therapy progress notes reveal that claimant was doing OK, she looked forward to coming to group every week, she was able to pay attention to the activities without a problem and she enjoyed the activities. (AR 166-169).

The ALJ appropriately reviewed the medical evidence of record, finding that claimant has a history of treatment for ADHD, she has been treated with medication and case management , and has attended a social skills group with good results. (AR 14). Based on the aforementioned medical records, the ALJ properly concluded that claimant does not have a medically determinable impairment that results in marked limitations in two domains of functioning or extreme functional limitations in one domain. (AR 14-17).

The ALJ noted that, following treatment, claimant's mother reported that claimant was doing well in school and was doing her homework. (AR 15). In addition, the ALJ indicated that claimant was reported to have average intelligence, and, although her teacher had reported that claimant was at risk for retention, there is no indication that she had ever been retained. Therefore, the ALJ properly determined that claimant had no limitation in acquiring and using information. (AR 15). This finding is in accord with the weight of the record evidence as mentioned above.

The ALJ also indicated that the record revealed that claimant's teacher indicated claimant had difficulty staying on task, paying attention and following instructions and claimant's mother reported that claimant's home behavior was hyperactive, aggressive and argumentative. (AR 15). Nevertheless, the medical records reveal that claimant was treated with medication with good results, and treatment notes indicate that claimant was able to complete her homework. (AR 15). Accordingly, the ALJ appropriately found that claimant had a limitation in attending and completing tasks, but that there was no indication that claimant has a limitation which seriously affects her

///

1  functioning. (AR 15). This finding is in accord with the weight of the aforementioned record
2  evidence.

3      Furthermore, the ALJ indicated that although claimant had one referral at school due to
4  inappropriate behavior, claimant had never been suspended. (AR 16). The ALJ also noted that
5  although she is sometimes shy and has trouble getting along with siblings, claimant routinely attends
6  a social skills group. (AR 16). The ALJ found that there is no indication that claimant has any
7  physical impairment that interferes with her functioning and that claimant has no significant side
8  effects from medication and has improved functioning on regular doses of Concerta. Thus, the ALJ
9  determined that claimant had no limitation in interacting and relating to others, in moving about and
10 manipulating objects and in health and physical well being. These findings are supported by the
11 evidence of record as discussed above.

12     Finally, the ALJ noted that Mr. Lenix testified that claimant requires assistance in caring for
13 herself. (AR 16). However, the ALJ properly held that there was no indication that claimant was not
14 able to care for herself in an age appropriate manner and that claimant thus had no limitation in the
15 domain of caring for oneself. (AR 16). Again, this finding is supported by the medical reports of
16 record.

17     When reviewing the ALJ's decision, the court will uphold the decision if the findings of fact
18 are supported by substantial evidence. Delgado v. Heckler, 722 F.2d 570, 572 (9th Cir. 1983) (citing
19 42 U.S.C. § 405(g)). However, it is not the role of the court to second-guess the ALJ. If evidence
20 supports more than one rational interpretation, the court must uphold the decision of the ALJ. Allen
21 v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984). The medical evidence in this case was quite adequate
22 for the ALJ to make a disability determination in this case, thus, there was no need for an updated
23 consultative examination or for a medical expert to give testimony regarding claimant's limitations
24 in this case. The evidence of record supports the ALJ's determination that claimant does not have a
25 medically determinable impairment that results in marked limitations in two domains of functioning
26 or extreme functional limitations in one domain.

27     It is significant to note that the ALJ also held the administrative record open, post-hearing,
28 for the submission of additional evidence, and claimant submitted additional records. See, e.g.,

Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1999) (where the ALJ discharged his duty to develop the record by identifying an evidentiary concern and holding the record open to allow the submission of additional evidence). (Court Doc. 18, p. 10). In any event, the undersigned finds that the administrative record was adequately developed to permit the ALJ to make a determination which was based on substantial evidence, and claimant has not established prejudice or unfairness as a result of the ALJ's management of the case. Claimant's claim regarding the ALJ's failure to adequately develop the record is without merit.

**B. Mr. Lenix's Testimony**

Claimant also argues that the ALJ erred by improperly weighing Mr. Lenix's testimony, because the ALJ found Mr. Lenix's testimony credible, yet still concluded that claimant was not disabled. (Court Doc. 11, pp. 8-9).

"Credibility determinations are the province of the ALJ." Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989); Russell v. Bowen, 856 F.2d 81, 83 (9th Cir. 1988). However, the ALJ may not ignore or improperly reject the probative testimony of a lay witness without giving reasons that are germane to each witness. Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993). The Commissioner shall "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987), *citing* 20 C.F.R. § 404.1513(e)(2).

The ALJ found Mr. Lenix's testimony credible, but explained that his testimony did not support a finding that claimant was disabled. (AR 14). The ALJ indicated that "[a]lthough the record reveals the child's father is understandably concerned about his daughter's well being, his presupposed conclusion that the claimant is disabled is not in accord with the weight of the medical evidence." (AR 14). As noted by the Commissioner, the ALJ concluded that Mr. Lenix's testimony simply failed to describe behavior and actions which rose to the level of disability within the meaning of the Act. (Court Doc. 12, p. 9). Mr. Lenix testified that claimant, among other things, did not prepare her own meals, dress herself without her mother's assistance, do housework, tell time, read the newspaper, operate the VCR, cut with a knife, or use scissors. (AR 246). However, this does not mean that claimant was unable to do age appropriate activities or that her limitations were

either marked or extreme. (AR 15-16). For example, the ALJ properly held that, despite Mr. Lenix's testimony, there was no indication that claimant was not able to care for herself in an age appropriate manner. (AR 16). Moreover, the medical reports of record, as described in Section A, indicate that claimant was treated with medication with good results and she made progress at group therapy. Supra. A review of the record reveals that claimant appears to have difficulty only when she is not given her medication. It appears that claimant functions well when consistently taking her prescribed medication. Despite Mr. Lenix's credited testimony, substantial record evidence supports the ALJ's conclusion that claimant is not disabled within the meaning of the Act.

## **CONCLUSION**

For the reasons outlined above, the undersigned finds no error in the ALJ's analysis. As such, the Commissioner's decision to deny claimant childhood disability benefits is supported by substantial evidence in the record as a whole and based on proper legal standards. Accordingly, this Court DENIES claimant's appeal from the administrative decision of the Commissioner of Social Security.

The clerk of this Court is DIRECTED to enter judgment as a matter of law in favor of defendant Jo Anne B. Barnhart, Commissioner of Social Security, and against claimant Sharay Lenix.

IT IS SO ORDERED.

**Dated:   May 25, 2005**                              /s/ Theresa A. Goldner
j6eb3d                                                  UNITED STATES MAGISTRATE JUDGE